UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                             No. **CR 03-778 MCA**

**KENNETH RANDALL MARKEY**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the *United States' Motion in Limine to Exclude Non-Relevant Evidence Regarding Whether the Seized Dynamite Can Explode* [Doc. No. 64] filed on December 1, 2003, and *Defendant's Motion in Limine to Preclude the Government's Introduction of Suggestion or Opinion That the Dynamite is Dangerous or Capable of Explosion* [Doc. No. 42] filed on September 29, 2003. The Court held a hearing on these motions on December 4, 2003. Having reviewed the relevant law, the evidence and arguments presented by counsel, the exhibits of record and the record of prior proceedings, and being fully advised in the premises, the Court concludes that good cause exists to preclude the parties from presenting evidence or argument to the effect that an actual explosion of the objects in question, or evidence of their dangerousness, is necessary in order to prove that these objects are explosives under the applicable statutes as charged. Such evidence or argument is not relevant and would mislead the jury as to the applicable law. Accordingly, the parties' motion in limine are granted in part with respect to such argument or evidence as further explained below.

The parties' motions in limine are denied in part in the following respects. First, the parties may refer to the statutory definition of "explosives" in 18 U.S.C. § 841(d), which includes the phrase "the primary or common purpose of which is to function by explosion." Second, the parties may examine the Government's expert witnesses (identified as a forensic chemist and an ATF explosives officer) regarding the basis for their opinions regarding the identification or classification of the objects in question as "dynamite" or "explosives," the procedures that they actually used in making such an identification or classification, and the basis for their decision to use those procedures. In this regard, Defendant may ask such questions as will enable him to test whether the reasoning or methodology underlying the experts' testimony is scientifically valid and can be applied to the facts at issue in this case. To the extent the parties require further clarification regarding specific questions that may be asked of these witnesses, the Court defers ruling on the motions in limine until such questions can be evaluated in their proper context at trial.

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine. See generally United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002). When the Government's efforts to exclude evidence might affect a criminal defendant's constitutional rights with regard to the presentation of his defense at trial, however, a more exacting standard of review may be implicated. See United States v. Powell, 226 F.3d 1181, 1198-99 (10th Cir. 2000); Romano v. Gibson, 239 F.3d 1156, 1166 (10th Cir. 2001). "Under the Sixth Amendment Compulsory Process Clause, criminal defendants generally have the right to present 'competent, reliable . . . exculpatory

evidence.'" DiBenedetto v. Hall, 272 F.3d 1, 7-8 (1st Cir. 2001) (quoting Crane v. Ky., 476 US. 683, 690 (1986)). The Fifth Amendment Due Process Clause guarantees similar rights with regard to the presentation of evidence that is critical to the defense. See Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997); Powell, 226 F.3d at 1199.

"Nonetheless, restrictions upon a defendant's ability to present witnesses are permissible" under certain conditions. Powell, 226 F.3d at 1199; accord Romano, 239 F.3d at 1166 n.3. Such restrictions may arise from the state's "legitimate interest in ensuring that reliable evidence is presented," and evidentiary exclusions will not violate the constitution "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Ark., 483 U.S. 44, 56 (1987)); accord DiBenedetto, 272 F.3d at 8-9.

To determine whether such evidentiary restrictions may apply in this case, the Court must examine both the relevance and the materiality of the proposed testimony at issue. See Powell, 226 F.3d at 1199. The inquiry into relevance "'includes an examination as to whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony.'" Id. (quoting Richmond, 122 F.3d at 872). The inquiry into materiality includes an examination of whether the proposed testimony is "'of such an exculpatory nature that its exclusion [would] affect[] the trial's outcome.'" Id. (quoting Richmond, 122 F.3d at 872).

The *Indictment* in this case charges Defendant with violating 18 U.S.C. § 842(i) and 18 U.S.C. § 844(a) by knowingly shipping, transporting, and possessing explosive materials,

to wit: three (3) Hercules high explosive cartridges, manufactured by Hercules, which had been shipped and transported in interstate commerce. [Doc. No. 11.] To support these charges, the Government has proffered the testimony and report of a forensic chemist and an ATF explosives officer who have identified the objects in question as dynamite and classified them as explosives based on an analysis of their chemical composition and an examination of product labeling from which the history of their manufacture can be traced. [Ex. B to Doc. No. 38; Tr. 12-4-03; Tr. 11-12-03.]

Defendant has testified that an acquaintance of his found four sticks of dynamite in a trash dumpster and brought them to him. Defendant contends that the objects he is charged with illegally shipping, transporting, and possessing in this case should no longer be classified as "explosives" because they were manufactured 32 years ago, were not stored properly, and, as a result, have degraded to the point where they no longer have the capacity to produce an explosion. In this regard, Defendant alleges that, prior to his arrest, he took one of the four sticks of dynamite to a remote area of the City and attempted to blow it up with a blasting cap. Such attempt failed. [Ex. A to Doc. No. 38; Ex. B to Tr. 12-4-03.]

In evaluating the parties' contentions, the Court first looks to the language of the relevant statutory provisions. 18 U.S.C. § 842(i) provides, in relevant part, that:

> It shall be unlawful for any person . . . who has been convicted by any court of . . . a crime punishable by imprisonment for a term exceeding one year ... to ship or transport any explosive in interstate or foreign commerce or to receive or possess any explosive which has been shipped or transported in interstate or foreign commerce.

See United States v. Van Horn, 277 F.3d 48, 54 (1st Cir. 2002). 18 U.S.C. § 844(a) further

provides, in relevant part, that: "Any person who . . . violates any of subsections (a) through (i) . . . of Section 842 shall be fined under this title, imprisoned for not more than 10 years, or both . . . ."

Defendant contends that it is necessary, or at least relevant, to show that the objects in question actually exploded in order to establish whether they constitute "explosives" under 18 U.S.C. § 842(i). To support this proposition, Defendant primarily relies on authorities which suggest that an object may not fall under the statutory definition of a "destructive device" unless it is actually capable of exploding. See, e.g., United States v. Langan, 263 F.3d 613, 625-26 (6th Cir. 2001); United States v. La Cock, No. CR 00-552 JP (D.N.M. Aug. 12, 2002) (unpublished memorandum opinion and order). But see United States v. Evans, 526 F.2d 701, 707 (5th Cir. 1976) ("The statute apparently does not require that a device be successfully detonated before it can be considered a bomb.").

The authorities cited by Defendant are inapposite in this case because the statutory definition of "explosives" differs significantly from the statutory definition of a "destructive device." As used to define the offense listed in 18 U.S.C. § 842(i), the term "explosives" means:

> any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters. The Attorney General shall publish and revise at least annually in the Federal Register a list of these and any additional explosives which he determines to be within the coverage of this chapter.

In addition to appearing in the language of the statute itself, dynamite and other commercial

5

explosives are listed in the Federal Register as falling within this definition. See 67 Fed. Reg. 20864, 20865 (Apr. 26, 2002).

In contrast to this broad statutory definition of "explosives," the term "destructive device" has a narrower meaning that is primarily aimed at "weapons of war and 'gangster-type weapons.'" United States v. Posnjak, 457 F.2d 1110, 1116 (2d Cir. 1972); see United States v. Johnson, 152 F.3d 618, 624 (7th Cir. 1998). The term "destructive device" generally does not include commercially available explosive devices which are designed for legitimate purposes outside the sphere of warfare and criminal behavior.[1] Thus, commercial dynamite generally does not fall within the statutory definition of a destructive device, see Posnjak, 457 F.2d at 1116, unless it is designed or intended for use as a component of a bomb, grenade, missile, mine, rocket, or similar device, see Johnson, 152 F.3d at 624-25.

Given the much narrower and specific meaning of the term "destructive device," it is reasonable for courts to impose more stringent requirements to prove that a particular object falls under this definition, especially when that object relies on a commercially available explosive such as dynamite for its destructive effect. Such stringent requirements of proof do not apply in this case because the statutory definition of "explosives" is broader than the statutory definition of a "destructive device" and does not depend on an object's destructive

---

[1] Under 26 U.S.C. § 5845(f), the term "destructive device" includes "(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled." The term "destructive device" does "not include any device which is neither designed nor redesigned for use as a weapon . . . ." Id.

effect or its capacity for use as a weapon.

In response to the Government's motion in limine, Defendant presents an alternative argument that the actual explosive strength or capacity of the objects in question is relevant to the statutory definition of "explosives" provided in 18 U.S.C. § 844(j).[2] This argument also lacks merit because the definition of "explosives" provided in 18 U.S.C. § 844(j) does not apply to the offense with which Defendant is charged in this case.

18 U.S.C. § 841(d) provides the definition of "explosives" for all offenses listed within 18 U.S.C. ch. 40 except for those listed in 18 U.S.C. §§ 844(d), (e), (f), (g), and (h). 18 U.S.C. § 844(j) provides the definition of "explosives" for only those offenses listed in 18 U.S.C. §§ 844(d), (e), (f), (g), and (h). Thus, these two statutory definitions apply to different offenses. They also differ significantly in other respects.[3]

---

[2] Under 18 U.S.C. § 844(j), the term "explosives" means: "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electrical circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of [18 U.S.C. § 232] . . . , and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture or device or any part thereof may cause an explosion." 18 U.S.C. § 844(j) incorporates the definition of "explosive or incendiary device" contained in 18 U.S.C. § 232(5). Under 18 U.S.C. § 232(5), the term "explosive or incendiary device" means: "(A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone."

[3] For example, the definition of "explosives" in 18 U.S.C. § 841(d) generally does not include gasoline, see United States v. Lorence, 706 F.2d 512, 514 (5th Cir. 1983), while the definition of "explosives" in 18 U.S.C. § 844(j) may include gasoline when it is used for a malicious purpose, see United States v. Barboa, 777 F.2d 1420, 1423 (10th Cir. 1985) (collecting cases).

7

In this case, Defendant is charged with violating 18 U.S.C. §§ 842(i) and 844(a), both of which fall within 18 U.S.C. ch. 40.  Defendant is not charged with violating 18 U.S.C. §§ 844(d), (e), (f), (g), or (h).  Thus, the definition of "explosives" provided in 18 U.S.C. § 841(d) applies in this case, and the definition of "explosives" provided in 18 U.S.C. § 844(j) does not apply here.

Moreover, the Tenth Circuit has concluded that it is not necessary for the Government to present evidence of an actual explosion in order to prove that a substance is an explosive under 18 U.S.C. § 844(j).  See United States v. Bunney, 705 F.2d 378, 380-81 (10th Cir. 1983); United States v. Ramsey, 726 F.2d 601, 603 (10th Cir. 1984).  Thus, even if the definition provided in 18 U.S.C. § 844(j) had some relevance to this case, it only supports the Government's position that evidence of an actual explosion is not required here.

At the hearing on December 4, 2003, Defendant presented another alternative argument based on the proposition that the term "explosives" is commonly understood to mean "something that actually explodes."  Under this definition, Defendant contends that evidence concerning the actual explosive strength or destructive capacity of the objects in question is relevant to the task of determining whether these objects are, in fact, explosives.  Defendant further contends that such evidence is available in this case because he is prepared to testify that when he attempted to detonate a fourth stick of dynamite with a blasting cap, the fourth stick of dynamite did not explode.  Defendant tendered photographs which purportedly show the unexploded fourth stick.  According to Defendant, the failure of the fourth stick of dynamite to explode demonstrates that the other three objects are not capable

of exploding.

Having considered the foregoing, the Court rejects Defendant's reasoning, and the proffer on which it is based, for the following reasons.  First, the offense with which Defendant is charged does not rely on the common usage or dictionary definition of the word "explosives," nor does it not define "explosives" in terms of their strength,  dangerousness, or destructive effect.  Cf. United States v. Hudak, No. CR 02-1574 MCA, slip. op. at 6-7 (D.N.M. Oct. 9, 2003) (unpublished memorandum opinion and order concluding that an object's reliability was not a dispositive factor when the relevant statutory definition focused on "objective physical structure" and "method of normal operation").  Rather, the offense with which Defendant is charged utilizes a very specific statutory definition of the term "explosives" that may differ in some respects from common usage or standard dictionary definitions.  The relevant provisions of the statute define "explosives" in terms of specific products, such as "dynamite," and in terms of their "primary or common purpose," which is "to function by explosion."   18 U.S.C. § 841(d).  In this regard, the Government has proferred expert testimony that the objects in question meet this particular statutory definition based on an analysis of their chemical composition and an examination of product labeling from which the history of their manufacture can be traced.

The Court further concludes that Defendant's experience with the fourth stick of dynamite does not provide a relevant or reliable basis for opining that the other three objects are incapable of exploding.  Defendant is not charged with any crime relating to the fourth stick of dynamite, so evidence regarding the explosive capacity of the fourth stick of

9

dynamite is not relevant here unless it can be reliably linked to the identification or classification of the three objects that Defendant is charged with illegally possessing. Defendant has not laid a sufficient foundation establishing such a link.

Moreover, Defendant has not presented sufficient credentials to qualify himself as an expert in identifying or classifying explosives under the relevant statute. Defendant also has not shown that the attempted detonation of the fourth stick of dynamite was performed using a reliable methodology that would assist the jury in determining a fact in issue under the standard provided in Fed. R. Evid. 702 and the factors listed in Daubert v. Merrell Dow Pharm., 509 U.S. 579, 594 (1993).

In his request that the Government attempt to detonate the remaining three sticks, Defendant also has not proffered any methodology for conducting such an attempt that would satisfy the requirements of Fed. R. Evid. 702 and Daubert and thereby lead to a reliable determination of their explosive capacity.[4] In contrast, the testimony of the Government's witnesses suggests that a more reliable way to identify or classify the objects in question under the relevant statutory definition involves conducting an analysis of their chemical composition and examining product labeling through which the history of their manufacture can be traced. Both of these methods involve keeping the objects intact rather than destroying them through detonation.

Finally, under the particular circumstances of this case, the Court determines that the

---

[4]In this regard, the Court takes note of the testimony presented at the hearing before Senior Judge Conway on November 12, 2003, at which the Government's witnesses opined that it would be unsafe to attempt to detonate the objects in question by conventional means due to their age and instability. (Tr. 11-12-03.)

10

probative value of the proffered evidence regarding the explosive capacity of the objects in question "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Defendant's testimony or other evidence on this topic would only confuse or mislead the jury because an actual explosion is not an element of the offense with which Defendant is charged.

As noted earlier, however, defense counsel is not precluded from challenging the conclusions of the Government's expert witnesses through cross-examination or voir dire concerning the basis for their opinions as to the identification or classification of the objects in question as "dynamite" or "explosives," the procedures they actually used in making such an identification or classification, and the basis for their decision to use those procedures. As in any case where expert testimony is presented, the jury may disregard an expert's opinion entirely if they decide that opinion is not based upon sufficient education and experience, or if they conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence. Further, the law does not require Defendant to prove his innocence or to testify or to produce any evidence at all. The parties' motions in limine are denied in part insofar as they imply that the Court must direct a verdict in favor of one party or the other on this issue or decide the credibility of the witnesses' testimony.

In their questioning of witnesses and closing arguments, the parties also may refer to the statutory definition of "explosives" in 18 U.S.C. § 841(d), which includes the phrase "the

primary or common purpose of which is to function by explosion." To the extent the parties require further clarification regarding specific questions that may be asked of these witnesses, the Court defers ruling on such questions until they can be evaluated in their proper context at trial.

**IT IS, THEREFORE, ORDERED** that the *United States' Motion in Limine to Exclude Non-Relevant Evidence Regarding Whether the Seized Dynamite Can Explode* [Doc. No. 64] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Preclude the Government's Introduction of Suggestion or Opinion That the Dynamite is Dangerous or Capable of Explosion* [Doc. No. 42] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this 5th day of December 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE